UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK

_____

In re:

CHRISTOPHER M. MURPHY,

                            **Debtor.**

_____

CHRISTOPHER M. MURPHY,

                          **Plaintiff,**

        **V.**

COUNTY OF CHEMUNG, Joseph
Sartori, Individually and in
his Official Capacity as
Chemung County Treasurer,
Christopher Moss, Individually
and in his Official Capacity
as Chemung County Sheriff,

                        **Defendants.**

_____

CASE NO. 06-21371

DECISION & ORDER

AP NO. 06-2103


## BACKGROUND

On July 31, 2006, Christopher Michael Murphy (the "Debtor"), filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that he was the "[o]wner in fee" and resided in real property located at 757 Linden Place, Elmira, New York (the "Property"), which had a current market value of approximately $12,000.00, and a secured claim of approximately $3,100.00.

On August 23, 2006, the Debtor commenced an Adversary Proceeding (the "Adversary Proceeding") against the County of

Chemung ("Chemung"), and Mr. Joseph Sartori ("Sartori") and Mr. Christopher Moss ("Moss"), individually, and in their official capacities as the Chemung Treasurer and Chemung Sheriff, respectively, (collectively, the "Defendants").  The Complaint in the Adversary Proceeding ("the Complaint"), included:  (1) a first cause of action (the "First Cause of Action") against Chemung and Sartori requesting that the Court determine that:  (a) the *in rem* tax foreclosure action against the Property (the "Tax Foreclosure Proceeding"), commenced in October 2005, pursuant to Article 11 of the New York Real Property Tax Law (NY RPTL), and any other action or proceeding taken against the Property by Chemung, based upon unpaid real property taxes, was void due to defective notice upon the Debtor and Wallace Williams ("Williams"), to whom the Debtor had transferred the Property;[1] and (b) the Debtor, not Chemung, was the owner of the Property; (2) a second cause of action[2] against

---

[1]     The Debtor alleged that: (1) he had resided in the Property continuously for eighteen years; (2) he owned the Property prior to August 13, 2005, at which time, he transferred it by quitclaim deed to Williams, who recorded the deed on August 29, 2005; (3) the consideration for the transfer was that the Debtor was permitted to continue to reside in the Property for two years without paying rent, during which time Williams would pay for certain repairs and expenses, including all real property taxes and assessments, and the Debtor and Williams would later sell the Property at a mutually agreed upon date, and share the proceeds equally; and (4)  Williams reconveyed the Property to the Debtor on March 21,2006.

[2]     The Complaint alleged two "second cause[s] of action," against the same Defendants, which, for the purposes of this Decision & Order are collectively referred to as the "Second Cause of Action."  This Second Cause of Action, along with the third cause of action, infra, are the section of the Complaint that the Debtor describes as the "[v]iolation of the automatic stay and related claims."

**Page 2**

BK. 06-21371
AP. 06-2103

the Defendants for a violation of federal statutory rights under 42 U.S.C. § 1983, and under the Due Process Clause and Equal Protection Clause of the 14th Amendment of the United States' ("U.S.") Constitution (collectively, the "Fourteenth Amendment"), due to a violation of the automatic stay (the "Stay") under Section 362(a)(3),[3] based solely upon the Debtor's assertions that: (a) on August 10, 2006 at approximately 8:10a.m., two Chemung Deputy Sheriffs (the "Deputies"), accompanied by two individuals standing on the sidewalk, informed the Debtor that he was required to immediately vacate the Property; (b) the Debtor informed the Deputies that he had filed for bankruptcy, so that he was protected by the Stay; (c) the Deputies indicated that if the Debtor did not open the door, they would break it down and arrest him for trespass; (d) one of the Deputies, possibly a Sergeant, began to kick down the door, and the Debtor opened the door, whereupon a Deputy entered the Property and instructed the Debtor to vacate the

---

[3]     Section 363(a)(3) provides that:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

    (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362 (2010).

**Page 3**

Property; (e) the Debtor located his dog and two cats, and vacated the Property; (f) the Debtor was informed that the two individuals with the Deputies, who "apparently work[ed] for the County," were going to padlock the front and back doors of the Property, and if the Debtor returned to the Property, he would be arrested; (g) as of the Complaint, dated August 21, 2006, and filed on August 23, 2006, the Debtor had been staying with a friend because he could not return to the Property for fear of arrest; and (h) the Debtor had borrowed money from his friend and his friend's neighbor; and (3) a third cause of action (the "Third Cause of Action") against the Defendants for a violation of New York Real Property Actions and Proceedings Law ("NY RPAPL") § 853,[4] based upon the Debtor being removed and kept from the Property.

The Debtor filed numerous Motions for Extensions of Time for the Defendants to Appear, Answer or Move in Response to Debtor's Summons and Complaint, which indicated that the Debtor and the Defendants were engaged in ongoing settlement discussions. The

---

[4]    NY RPAPL Article 8 § 853 – Action for Forcible or Unlawful Entry or Detainer; Treble Damages – provides that:

> If a person is disseized, ejected, or put out of real property in a forcible manner, or, after he had been put out is held and kept out by force or by putting him in fear of physical violence, he is entitled to recover treble damages in an action therefor against the wrongdoer.

N.Y. Real Prop. Acts. Law § 853 (2009).

Court ordered a final extension of time for the Defendants through February 15, 2009.

On March 5, 2009, the Debtor filed a Motion to Withdraw Reference of the Adversary Proceeding to the District Court, pursuant to 28 U.S.C. § 157(d) and Rule 5011(a), which indicated that: (1) the Debtor had excused the Defendants' initial failure to Answer or otherwise act with respect to the Debtor's Complaint; (2) subsequent to the filing of the Adversary Proceeding, Chemung conveyed the Property to Williams by quitclaim deed, rendering moot the Debtor's First Cause of Action, which sought a declaration that the Tax Foreclosure Proceeding was invalid, and that Chemung was not the owner of the Property; (3) the remaining relief that the Debtor sought in his Complaint was related to the Defendants' violation of: (a) the NY RPAPL; and (b) 42 U.S.C. § 1983 and federal constitutional protections under the Fourteenth Amendment, through the violation of the Stay; (4) the withdrawal of reference to the District Court was mandatory, pursuant to 28 U.S.C. § 157(d), because the Adversary Proceeding was a "non-core" proceeding, with mixed issues of bankruptcy and non-bankruptcy federal law; and (5) the Debtor was entitled to a jury trial under the Seventh Amendment to the U.S. Constitution, as requested in the Debtor's accompanying Demand for Jury Trial, pursuant to Rule 9015 and Federal Rule of Civil Procedure (FRCP) 38(b).

On April 7, 2009, the Defendants filed an Answer, which denied the substantive allegations of the Complaint, and included the affirmative defenses that: (1) Sartori was not subject to suit individually or in his official capacity as the Chemung Treasurer, nor was the Chemung Treasurer a separate administrative agency subject to suit; and (2) on January 20, 2009, the Debtor had executed a Delinquent Tax Installment Agreement (the "Delinquent Tax Agreement"), providing that the Debtor pay tax arrears on the Property, which rendered the Complaint moot.

On August 17, 2009, the United States District Court for the Western District of New York (the "District Court") issued a Decision (the "District Court Decision"), which denied the Debtor's Motion to Withdraw Reference, with leave for the Debtor to renew the Motion prior to trial, reasoning that the Adversary Proceeding was a "core" proceeding under 28 U.S.C. § 157(b)(2). The Court stated that "[u]pon review of Murphy's non-bankruptcy claim, the Court is dubious as to whether it will survive to require consideration of the constitutional rights raised in the complaint." The Court indicated that the Debtor had no legal standing to assert a defective notice claim on behalf of Williams, and stated that the Debtor, as the former owner of the Property at the time of the Tax Foreclosure Proceeding in October 2005, having

deeded the Property to Williams, had no standing to contest the Tax Foreclosure Proceeding or to redeem the Property.

On November 13, 2009, the Debtor filed a Motion for the Enlargement of Time to Join Additional Parties and to Amend the Complaint (the "Motion to Amend the Complaint"), in which the Debtor sought: (1) to Amend the Complaint under Rule 7015(a), as proposed in the Debtor's Amended Complaint that was attached to the Motion (the "Amended Complaint"),[5] which the Debtor stated was timely because: (a) the statue of limitations for claims under 42 U.S.C. § 1983 is three years from the date of the Debtor's August 10, 2006 eviction, and here, the Debtor initially sought the relief requested in the Debtor's Motion to Amend the Complaint in an Ex Parte Order to Show Cause, dated July 15, 2009 (the "Order to Show Cause");[6] (b) the Debtor was required only to demonstrate

---

[5] The Debtor's claims in the Amended Complaint were similar to the Complaint, but the Amended Complaint included additional claims and statements, including: (1) a separate cause of action: (a) against Sartori and Moss individually, whereas in the Complaint, the Debtor had included these individuals in his causes of action against the other Defendants; and (b) against the Deputies, identified as John Doe No. 1 and John Doe No. 2; and (2) the Debtor's statements that: (a) the "Chemung County Treasurer- in other words, Defendant Joseph Sartori[,]" had directed the Deputies and accompanying Chemung employees to evict the Debtor and secure the Property; (b) the Debtor did not feel safe removing the padlocks from the Property for several months; and (c) to avoid being arrested for trespass, the Debtor entered and exited his home by climbing through a bedroom window.

[6] The Debtor filed the Order to Show Cause with the Bankruptcy Court, which forwarded it to the District Court, where the Motion to Withdraw Reference was pending. The Debtor stated that when the District Court denied the Motion to Withdraw Reference, he made the instant Motion to Amend the Complaint seeking the same relief as in the Order to Show Cause.

"good cause" to enlarge the time to join the Deputies under FRCP 6(b) and Rule 7006(b), since the Debtor's initial request in the Order to Show Cause was made prior to the expiration of the three-year statute of limitations; and (c) good cause existed here because, although the Deputies were liable in their individual, as well as official capacities, Chemung would be required to represent them, since they were Chemung officials, and Chemung had been on notice of the Complaint; (2) permission to join the Deputies as defendants in the Adversary Proceeding, as "John Doe Number One" and "John Doe Number Two," pursuant to Rule 7019(a) and/or Rule 7020(a); (3) an extension of time to serve the Deputies with the Amended Complaint, under Rule 7006(b); and (4) an order directing Moss to respond to the Debtor's Interrogatories (the "Interrogatories"),[7] where the Debtor had requested the names of the Deputies, which, upon receipt, the Debtor would move to further

---

[7]    In the Interrogatories, dated July 6, 2009, attached to the Debtor's Motion to Amend Complaint, the Debtor sought the names and ranks of the Deputies directed to the Property at approximately 8:00 a.m. or sometime thereafter on August 10, 2006, "presumably, or possibly, but not necessarily at the instance or behest of Defendant Chemung County Treasurer Joseph Sartori, for the presumed, ostensible or possible reason of removing or evicting...[the Debtor]." The Debtor requested that in the event he "erred as to the aforementioned date of August 10, 2006," that the same information be provided for August 9 and August 11, 2006.

The Debtor also attached a letter to the Defendants' attorney, dated July 1, 2009, and a letter to the Records Access Officer of the Chemung County Sheriff's Department (the "Sheriff's Department"), containing a Freedom of Information Law Request (the "FOIL Request"), seeking all records relating to the Deputies removal of the Debtor on August 10, 2006, which the Debtor also stated was possibly, but not necessarily at the behest of Sartori or someone employed by the Chemung County Treasurer's Office (the "Treasurer's Office").

**Page 8**

amend the Complaint and the Amended Complaint to reflect their actual names.

The Court set a hearing on the Motion to Amend Complaint for November 20, 2009, which was adjourned to December 18, 2009, the same date that the Court had set for a pre-trial conference in the Adversary Proceeding.

On December 9, 2009, the Defendants filed an Affidavit in Opposition to the Debtor's Motion to Amend the Complaint, which indicated that: (1) the Debtor's request to join the Deputies was barred by the three-year statute of limitations; (2) the Debtor had not established good cause, because more than three years had elapsed since the Debtor filed the Adversary Proceeding, with the Debtor providing no justification for his delay in making the Motion to Amend the Complaint; and (3) joining the Deputies would serve no purpose because if the Deputies did take any action with respect to the Property, it would have been: (a) within their official capacity; (b) pursuant to an Amended Judgment in Action *in rem* for Foreclosure of Tax Liens, dated February 28, 2006 (the "Tax Foreclosure Judgment"), which awarded Chemung the Property; and (c) Chemung would be responsible for the Deputies' actions; and (4) the Sheriff's Department did not serve process, including any warrant of eviction, upon the Debtor, as set forth in the Affidavit of Ms. Diane Brown ("Brown"), the Clerk of the Civil Division of the

**Page 9**

Sheriff's Department (the "Brown Affidavit"), which stated that:
(a) the Sheriff's Department did not typically serve warrants of
eviction based upon tax foreclosure proceedings; (b) whenever a
Chemung Sheriff Deputy serves any process, including any type of
warrant of eviction, Chemung has a computerized record of the
document, indexed by the name of the individual served; and (c)
Brown searched the computerized records, pursuant to the Debtor's
FOIL Request and a request from the Defendants' attorney, and
informed both of them that there was no record of any eviction
papers having been served upon the Debtor by the Civil Division of
the Sheriff's Department.

On December 9, 2009, the Defendants also filed a Cross-Motion
for Summary Judgment Dismissing Complaint (the "Cross-Motion for
Summary Judgment"), which indicated that: (1) the Debtor had
conceded that his claims relating to the validity of the Tax
Foreclosure Proceeding were moot, since the County had executed a
deed conveying the Property back to Williams, who was the owner of
the Property at the time the Proceeding was commenced; (2) as
indicated in the District Court Decision, the Debtor had
transferred the Property to Williams, who was the owner of the
Property as of the date of the Tax Foreclosure Proceeding, so that
the Debtor had no standing to contest the Proceeding; (3) the Tax
Foreclosure Judgment was entered on February 28, 2006, and the

Debtor indicated that Williams reconveyed the Property to him by quitclaim deed, dated March 21, 2006, but the Debtor failed to timely move to reopen the Judgment within one month, as required under RPTL § 1131;[8] (4) the Debtor had never asserted that the alleged March 21, 2006 quitclaim deed from Williams to the Debtor was recorded; (5) if the Debtor purchased the Property from Williams, he should have obtained tax clearances from Chemung, as is customarily required prior to the transfer of property, as well as an abstract of title, which would have shown any pending foreclosure, so that any claim by the Debtor should be against Williams, not the Defendants; (6) if the Debtor wished to contest the Tax Foreclosure Proceeding and Judgment, he was required to do so in State Court; (7) the Debtor waived any rights to contest the Tax Foreclosure Proceeding by his execution of the Delinquent Tax Agreement; (8) the Debtor had no due process claim based upon inadequate notice of the Tax Foreclosure Proceeding since, under NY

---

[8]     NY RPTL Title 3, Section 1131 - Default Judgment - provides that:

> In the event of a failure to redeem or answer by any person having the right to redeem or answer, such person shall forever be barred and foreclosed of all right, title, and interest and equity of redemption in and to the parcel in which the person has an interest and a judgment in foreclosure may be taken by default as provided by subdivision three of section eleven hundred thirty-six of this title [Final Judgment]. A motion to reopen any such default may not be brought later than one month after entry of the judgment.

N.Y. Real Prop. Tax Law § 1131 (2009).

RPTL § 1125.1(a),[9] he was not a person whose right, title or interest was a matter of public record as of the date that the list of delinquent taxes for the Property was filed; and (9) the Debtor had not established any federally protected right entitling him to proceed in federal court.

The Court set a hearing on the Cross-Motion for Summary Judgment for December 18, 2009.

On December 17, 2009, the Debtor filed a Reply to the Defendant's Cross-Motion for Summary Judgment, which stated that the Debtor had standing to contest the Tax Foreclosure Proceeding, because: (1) he was the owner of the Property at the time he commenced the Adversary Proceeding; (2) he could assert a claim for

---

[9]     NY RPTL Title 3, Section 1125.1(a) - Personal Notice of Commencement of Foreclosure Proceeding - provides that:

> 1. (a) Parties entitled to notice. The enforcing officer shall on or before the date of the first publication of the notice above set forth cause a notice to be mailed to (i) each owner and any other person whose right, title, or interest was a matter of public record as of the date the list of delinquent taxes was filed, which right, title or interest will be affected by the termination of the redemption period, and whose name and address are reasonably ascertainable from the public record, including the records in the offices of the surrogate of the county, or from material submitted to the enforcing officer pursuant to paragraph (d) of this subdivision, (ii) any other person who has filed a declaration of interest pursuant to section eleven hundred twenty-six of this title [Declaration of Interest] which has not expired, and (iii) the enforcing officer of any other tax district having a right to enforce the payment of a tax imposed upon any of the parcels described upon such petition.

N.Y. Real Prop. Tax Law § 1125.1 (2009).

defective notice under NY RPTL § 1125.1(a), since he held the recorded title to the Property as of November 30, 2004, when the list of delinquent taxes was filed, and the County's attempted service upon him by certified first class mail was ineffective; (3) he had privity with Williams, as successor in title and interest to Williams' interests in the Property, including Williams' rights to contest the *in rem* Tax Foreclosure Proceeding; (4) while the statements that the Debtor attributes to Williams are hearsay, neither Williams nor the Debtor had any burden of proof until Chemung demonstrated that Williams had notice of the Tax Foreclosure Proceeding, which they had failed to do; and (5) he was not time-barred by NY RPTL § 1131, since the Judgment was void.

On December 18, 2009, the Court held a combined pre-trial conference in the Adversary Proceeding, and a hearing on the Motion to Amend Complaint and Cross-Motion for Summary Judgment. At the hearing, the Debtor again indicated that he was no longer pursuing the First Cause of Action, which related to the validity of the Tax Foreclosure Proceeding and the ultimate ownership of the Property, since Chemung had conveyed the Property to Williams, which effectively made the Debtor the owner of the Property by virtue of William's transfer of the Property to the Debtor by quitclaim deed, dated March 21, 2006. However, since the Debtor sought to establish his ownership of the Property as a possible basis for the

violation of the Stay under Section 362(a)[10] and claims related to a stay violation as set forth in the Debtor's Second and Third Causes of Action, the Debtor and Defendants requested, and the Court agreed, that they could submit further pleadings concerning the notice of the Tax Foreclosure Proceeding.

On February 10, 2010, the Defendants filed a Supplemental Memorandum of Law in Support of the Defendants' Cross-Motion for Summary Judgment (the "Supplemental Memorandum of Law"), which restated the Defendants' previous pleadings, and indicated that: (1) the Debtor did not have standing to contest any alleged defective notice in the Tax Foreclosure Proceeding, on himself or Williams, because standing was conveyed to Williams, as the aggrieved party, based upon the facts giving rise to a claim, not to the Debtor, as the owner of the Property at the time of the Debtor's commencement of the Adversary Proceeding; and (2) the Debtor was given proper notice under NY RPTL § 1125.1(a), as demonstrated by the Affidavit of Ms. Robert Sahlberg, the Principal Account Clerk of the Chemung County Treasurer's Office (the "Sahlberg Affidavit").[11]

---

[10]    The Debtor asserted that the Property qualified as property of the estate under Section 541(a), regardless of whether it was recorded.

[11]    The Sahlberg Affidavit indicated that: (a) the County provided proper notice to the Debtor of the Tax Foreclosure Proceeding by mailing him an envelope, post-marked on October 6, 2005, by certified mail/return receipt, which would have contained a statement of the foreclosure of taxes, a summary of the

The Defendants also asserted in the Supplemental Memorandum of Law that the Debtor was not evicted by anyone associated with Chemung, as demonstrated by: (1) the Debtor's Complaint and other pleadings, which did not assert that any alleged removal was based upon a foreclosure proceeding; (2) Sartori's Affidavit, which stated that: (a) since 2003, when he was appointed the Chemung County Treasurer, no warrant of eviction had been issued or served by the Treasurer's Office in connection with an *in rem* foreclosure proceeding, but rather, foreclosed properties were sold at auction and it became the responsibility of the purchaser to take any necessary removal steps in the case of a holdover occupant; (b) if there had been an eviction warrant, it would have been kept on file by the Treasurer's Office, and no eviction warrant, nor any other similar notice, was contained in the foreclosure file for the Property; and (c) the Treasurer's Office did not issue any direction whatsoever to the Sheriff's Department, or any other police agency or department, to take any action with regard to the Property, before, or after the Tax Foreclosure Proceeding; and (3) the Supplemental Affidavit of Ms. Diane Brown, the Clerk of the Civil Division of the Sheriff's Department (collectively, along

---

taxes due and a notice of the foreclosure proceeding (the "Notice"); and (b) despite the U.S. Postal Service's efforts to deliver the envelope on October 7, 2005, October 12, 2005 and October 22, 2005, including posting a notice on the Property indicating that there was mail to be picked-up at the Post Office, the envelope was returned to the Chemung County Treasurer's Office as unclaimed.

with the Brown Affidavit, the "Brown Affidavits"), which stated that: (a) her search of the records of contacts in August, 2006, with individuals concerning criminal proceedings, revealed that no Chemung Deputies from the Civil or Criminal Divisions, including road patrol, went to the Property; and (b) she found nothing in Chemung's records to indicate that any direction was given to any other police agency to effectuate eviction proceedings, including any warrant of eviction, which would have been found, along with an eviction notice, if an eviction had occurred.

On February 25, 2010, the Debtor filed a Response to the Defendants' Supplemental Memorandum of Law, which restated many of his previous pleadings, and indicated that: (1) his standing to contest the Tax Foreclosure Proceeding was not relevant to whether he had standing to bring the Adversary Proceeding; (2) he had standing to challenge the Tax Foreclosure Proceeding because: (a) he was aggrieved by the Tax Foreclosure Judgment; (b) he was entitled to notice under NY RPTL § 1125.1(a) and he should not be penalized for not retrieving the Notice at the Post Office; and (c) Williams was also entitled to notice under RPTL § 1125.1(a), which Chemung did not effectuate, and its failure was fatal to the validity of the foreclosure; (3) the absence of eviction papers was irrelevant since the Debtor was alleging that the Deputies appeared without process, and the Sheriff's Department's deputies may not

have kept a record of all of their activities; and (4) the Debtor's statements that the Treasurer's Office directed two Chemung Public Works employees to secure the Property with padlocks, and that one of the Deputies informed the Debtor that Chemung owned the Property, are material issues of fact.

On April 30, 2010, the Court held a combined pre-trial conference and hearing on the Debtor's Motion to Amend the Complaint and the Defendants' Cross-Motion for Summary Judgment. The Debtor and the Defendants continued to dispute the validity of the Tax Foreclosure Proceeding, including proper notice, and accordingly, the Debtor's potential ownership of the Property as a basis for the Debtor's Second and Third Causes of Action relating to a violation of the Stay.

The Court indicated at the April 30, 2010 combined conference and hearing that it was being asked to make legal determinations regarding the Debtor's unusual and extraordinary allegations and the parties' competing motions, without:  (1) the benefit of an investigation by any relevant investigatory agency, since the Debtor had not filed a report with any agency; or (2) any corroborating evidence provided by the Debtor, such as photographs or corroborating witnesses to any elements of his allegations.  The Court suggested that the Debtor contact an entity with the authority to investigate his removal-related allegations, including

the New York Attorney General's Office or the New York State Police. The Court also suggested to the Debtor that should these suggested investigatory entities for any reason fail to investigate upon a request by the Debtor, the Court would approach the District Court to determine if a federal agency could do an investigation. The Court also even suggested that the Debtor stand outside the Sheriff's Department as the various shifts changed, so that he could identify the Deputies who allegedly removed him, and further instructed the attorney for the Defendants to insure that the Debtor was not harassed if he elected to do that after notifying the attorney in advance.

On June 9, 2010, the Defendants' attorney filed a letter (the "Defendants' Letter"), indicating that: (1) a private investigator that his office engaged conducted an interview of the Sheriff's Department and reported that:    (a) he interviewed all of the uniformed Sheriff's Department personnel, whether captain, sergeant, investigator or deputy and showed them a photograph of the Property; (b) he asked these individuals if they had served any process at the Property on August 9, 10 or 11 of 2006, the three days that the Debtor claims that the alleged removal might have occurred; and (c) those interviewed denied serving any papers or process on the Debtor, or being at the Property; (2) if a member of the Sheriff's Department was at the Property on the dates alleged

by the Debtor, there would have been a record, and the Sheriff's Department conducted a search of all electronic and paper records, and found no such record; (3) the Sheriff's Department does not carry padlocks, nor would they purchase padlocks with their own money, and the Debtor has not produced any padlocks or photographs of padlocks allegedly used to secure the Property; (4) Chemung's policy is not to have the Sheriff's Department serve eviction notices in tax foreclosure proceedings, and to everyone's knowledge who currently works for Chemung, such notices have not ever been served; (5) neither the Treasurer's Office, nor the Chemung County Attorney's Office had prepared an eviction notice or other similar document which could have been served on the Debtor, nor had the Debtor produced any such document; (6) the Debtor had failed to support his federal due process claim by indicating that any action by the Sheriff's Department was willful; and (7) based upon the Debtor's failure to provide any corroborating evidence of his claims, the Defendants opposed any intervention by a third-party agency.

On July 6, 2010, the Debtor filed a Declaration in Response to the Defendant's Letter, indicating that the Defendants were not entitled to summary judgment under FRCP Rule 56(e) and Rule 7056(e) since: (1) the Affidavits submitted by the Defendants were insufficient under Rule 56(e)(1) because: (a) the Sahlberg

**Page 19**

Affidavit was immaterial because the Affidavit, attached Tax
Foreclosure Proceeding Notice, and Abstract of Title pertained to
the validity of the Tax Foreclosure Proceeding, which was unrelated
to the Debtor's Second and Third Causes of Action; (b) the
statements in the Brown Affidavits that no eviction process was
served and no Sheriff's Department road patrol Deputies went to the
Property were immaterial, because the Debtor never claimed that any
eviction papers were served; (c) the statement in the Sartori
Affidavit that Chemung does not issue warrants of eviction in *in
rem* foreclosure proceedings is not based upon personal knowledge,
and it was also immaterial, because the Debtor never claimed that
any eviction papers were served; (d) the statement in the Sartori
Affidavit that his office did not issue any direction to Chemung or
the Sheriff's Department or any other agency, including any other
police agency, to take action with regard to the Property is self-
serving, since Sartori is named as a defendant in the Complaint,
and it is not based upon personal knowledge, since Sartori cannot
make statements on behalf of all other personnel in his office; and
(e) the Defendants' Letter was not made by the investigator, who
had personal knowledge, and it was unsworn; and (2) the Defendants
should have submitted the Affidavits of: (a) everyone with
supervisory authority at the Sheriff's Department and Chemung
Department of Public Works, as well as any other Chemung department

with employees who perform maintenance duties, and any department that would have the use of an official Chemung pick-up truck with the Chemung seal or logo on the door, stating that no employee removed the Debtor from the Property and secured the doors of the Property; and (b) every employee who could have possibly had the use of an official Chemung pick-up truck on the date that the Debtor was evicted, denying that they ever went to the Property.

The Debtor indicated that since the Defendants had not met their burden under FRCP 56 and Rule 7056, the Debtor had no burden whatsoever to present facts, evidence or documentation to defeat the Defendants Cross-Motion for Summary Judgment, and the Debtor further stated that: (1) his statements in his pleadings had been declared to be true under the penalty of perjury,[12] so that they were the equivalent of affidavits, and the statements established a genuine issue of material fact for trial; (2) under FRCP 56(f) and Rule 7056(f), further discovery is needed because: (a) the Defendants would not respond to the Debtor's discovery demands until the Court ruled upon the Defendants' Cross-Motion for Summary Judgment; and (b) while the Debtor agreed with the Defendants that

---

[12] The Debtor attached a second amended complaint, which the Debtor indicated differed from the Amended Complaint in that this second amended complaint contained a declaration that all statements were true under penalty of perjury, a declaration which may have been absent in the original version of the Amended Complaint. The Court hereinafter refers collectively to both versions of the amended complaint, each of which the Court has considered for purposes of this Decision & Order, as the Amended Complaint.

a third-party investigation of the Sheriffs would have been inappropriate, the Debtor sought to conduct an investigation himself; and (3) a reasonable jury would find the Debtor's claims credible that he: (a) never complained to Chemung or anyone concerning his claims, but rather performed legal research and commenced this Adversary Proceeding; (b) did not immediately return to the Property because he was threatened with immediate arrest; (c) did not have photos of the padlocks used to secure his property, because he did not have a working camera; and (d) had not produced the padlocks, although they were in his possession, because he was not required to produce them, since they have not been sought through discovery, and no burden has shifted to him to defeat the Defendant's Cross-Motion for Summary Judgment.

On July 21, 2010, the Defendants filed the Affidavit of Mr. Joseph Allegretto ("Allegretto") (the "Allegretto Affidavit"), the investigator referred to in the Defendants' Letter, which stated that: (1) Allegretto attested that the Defendants' Letter accurately stated the results of Allegretto's interview of the Sheriff's Department; and (2) Allegretto also personally contacted and interviewed personnel with the City of Elmira,[13] including the

---

[13] While the City of Elmira, where the Property is located within Chemung County, was not named in the Complaint, the Defendants' attorney indicated that the Defendants additionally interviewed City of Elmira personnel, in an attempt to further dispute the Debtor's allegations.

Code Enforcement and Department of Health, and was advised that no employee from any of the departments/agencies had ever gone to the Property during the time of the event described by the Debtor in his pleadings.

On July 23, 2010, a pre-trial hearing was held, along with a hearing on the Debtor's Motion to Amend Complaint and the Defendants' Cross-Motion for Summary Judgment. The Court reserved decision on these Motions.

## DISCUSSION

**A.    Summary Judgment**

FRCP 56, incorporated by reference in Rule 7056 provides that "summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled, as a matter of law, to a judgment in its favor." In re Bennett Funding Group, Inc., 220 B.R. 743 (Bankr. N.D.N.Y. 1997) ("Bennett Funding"), citing Federal Deposit Ins. Corp. v. Bernstein, 944 F.2d 101, 106 (2d Cir. 1991). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact for trial. In re Corcoran, 246 B.R. 152, 158 (Bankr. E.D.N.Y. 2000) ("Corcoran"), citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986) ("Matsushita"). Once the moving party has met its initial burden, "the non-movant must then come

**Page 23**

forward with sufficient evidence on the elements essential to its case to support a verdict in its favor." Corcoran, at 158, citing Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986).

In deciding to grant or deny summary judgment, "the trial court must resolve all ambiguities and draw inferences in favor of the party against whom summary judgment is sought." Bennett Funding, at 751, citing LaFond v. General Physics Servs. Corp., 50 F.3d 165, 171 (2d Cir. 1995); Corcoran, at 156, citing Reyes v. Delta Dallas Alpha Corp., 199 F.3d 626, 627-28 (2d Cir. 1999). However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997) citing Matsushita, at 586 (further citations omitted). Summary judgment is therefore inappropriate if any evidence exists in the record upon which a reasonable inference may be drawn in favor of the non-moving party. Id., citing Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

B.   **Defendant's Cross-Motion for Summary Judgment**

   1.   **Overview**

The Defendants, in their Cross-Motion for Summary Judgment, have moved for summary judgment as to each of the three causes of action in the Complaint. However, in the Debtor's pleadings and as

part of the hearings held by the Court, the Debtor indicated that he was no longer pursuing the First Cause of Action, since it was moot. Accordingly, the Court is required only to determine whether the Defendants' Motion should be granted as to the Second and Third Causes of Action in the Complaint.

The Court has not previously in the Adversary Proceeding, and will not in this Decision & Order, determine whether the Debtor was the owner of the Property on July 31, 2006, the date of his petition, by reason of the March, 2006 quitclaim deed from Williams, which may depend upon whether the Tax Foreclosure Proceeding properly resulted in the title to the Property being awarded to Chemung in February, 2006. The related issues would be time consuming, complicated and unnecessary to determine, where, as held in this Decision & Order, that notwithstanding the Debtor's ownership of the Property, there exists no genuine issue of material fact as to the Second and Third Causes of Action, and the Defendants are entitled to summary judgment. If the Court was not granting summary judgment to the Defendants, it would be necessary to ultimately determine ownership and whether the Property was property of the estate for purposes of Section 362(a)(3). This Decision & Order is without prejudice to the rights and arguments of the parties with respect to that ownership issue.

Although the Defendants have complied with the Debtor's FOIL Request, and have provided sufficient evidence and information that makes the Debtor's allegations not credible that he was removed from the Property by someone associated with Chemung, the Court has no doubt that they could have provided additional information, such as providing the Debtor with photos of all of the Chemung Sheriff's Department Deputies, if such photos exist. The Debtor, on the other hand, has dug in his heels and not made any attempt to provide any information or evidence to corroborate his extraordinary allegations, even in the face of the information supplied by the Defendants and the Court's suggestions.

### 2. **The Second and Third Causes of Action**

The Defendants have met their initial burden under FRCP 56 and Rule 7056 to: (1) establish that there is no genuine issue of material fact with respect to the Debtor's allegations of removal from the Property, which is a necessary finding for the Debtor to prevail on both his Second and his Third Causes of Action; and (2) have the Court determine that the Defendants are entitled to summary judgment on the Second and Third Causes of Action in the Complaint, based upon the following: (a) the Brown Affidavits and Sartori Affidavit establish that: (i) at least since 2003, while Sartori has held his position as the Chemung County Treasurer,

which includes overseeing the *in rem* foreclosure proceedings in Chemung County, no warrants of eviction have been sought by the Treasurer's Office in connection with those *in rem* foreclosure proceedings, but rather, such properties are routinely sold at auction, and then it is left to the purchaser to take any necessary steps concerning a holdover occupant; (ii) if any eviction papers had been sought by the Treasurer's Office and issued by an appropriate Court in connection with the Property, those papers would have been kept on file by the Treasurer's Office, however, no warrant of eviction, or any other similar papers or Court orders, were found in Sartori's search; (iii) whenever a Chemung Sheriff's Deputy serves legal process, including any warrant of eviction, the Chemung Sheriff's Department has a computerized record of the document, which is stored and indexed by the name of the individual served, and Brown's search in response the Debtor's FOIL Request, and a request from the Defendants' attorney, revealed no record of any warrant of eviction having been served upon the Debtor by the Civil or Criminal Division of the Chemung Sheriff's Department; (iv) Brown's search of the records of August, 2006 contacts with individuals concerning criminal proceedings, revealed that no Chemung Sheriff's Deputies from the Civil or Criminal Divisions, including road patrol, went to the Property; (v) based upon Brown's search, nothing in Chemung's records indicate that in August, 2006,

**Page 27**

any direction was given to any other police agency to effectuate eviction or removal proceedings for the Property, including the forwarding of any warrant of eviction; and (vi) the Chemung Treasurer's Office did not issue any direction to any Chemung Department, including the Sheriff's Department, or any other police agency, to take any action with regard to the Property, before, or after the Tax Foreclosure Proceeding; and (b) these statements, which were properly made under FRCP 56(e) and FRCP 7056(e), along with the other pleadings and evidence before the Court, demonstrate that the Defendants have met their initial burden of entitlement to summary judgment by establishing that there is no genuine issue of material fact as to the removal statements and allegations made in the Second and Third Causes of Action in the Complaint.

Since the Defendants have met their initial burden, the Debtor is required not to merely rely on the allegations of his Complaint, or a metaphysical doubt as to the material facts, but rather to establish that a genuine issue of material fact exists.

The Debtor has failed, under FRCP 56 and Rule 7056, to raise a genuine issue of material fact that he was evicted or removed from the Property in August, 2006, as he has alleged, for the following reasons: (1) the Debtor has indicated that since he believes that the Defendants have not met their initial burden in support of their Cross-Motion for Summary Judgment, he is not

required to do anything more in order to establish a genuine issue of material fact; he can merely rely on his uncorroborated allegations; (2) the Debtor has failed to meet his burden under FRCP 56(e)(2) and Rule 7056(e)(2), which require that, on the facts and circumstances of this case where the Defendants' Cross-Motion for Summary Judgment has been properly supported, the Debtor may not merely rely on allegations or denials in his own pleadings, but rather, must, by affidavits, or as otherwise provided in FRCP 56 and Rule 7056, set out specific facts showing a genuine factual issue for trial; (3) even when this Court allows the Debtor the benefit of reasonable inferences as to his statements and allegations in the Complaint, the Amended Complaint,[14] and his other pleadings and statements at various hearings in this Adversary Proceeding, the Court finds that no reasonable trier of fact, including a jury, could find in favor of the Debtor, based upon the following: (a) the Debtor's assertion that he was kept away from the Property for at least one week, because it was padlocked and he feared that he would be arrested if he returned, as well as his statement in his Declaration in Response, that he stayed away "long

---

[14] The Court notes that although it denies the Debtor's Motion to Amend the Complaint, infra, the Court considered the Debtor's factual statements in the Motion and the Amended Complaint itself, in its determination of whether the Defendants' Cross-Motion for Summary Judgment should be granted. The Court determined that in addition to the Debtor failing to demonstrate that the Court should grant the Motion to Amend to Complaint, the Debtor failed, through its Motion and the Amended Complaint, to raise a genuine issue of material fact preventing summary judgment against the Debtor under FRCP 56.

**Page 29**

enough to sort things out in [his] mind and do some legal research," as well as "prepare some written notes concerning the matter that [he] would be able to use or point to if [he] ever got arrested or there was any problem of this sort- arguments, reasons, legal authorities and citations, etc. in support of [his] position, etc.," is uncorroborated and is not at all credible in this Court's view; (b) while the Debtor has indicated that he has legal training, and that he undertook to immediately outline his legal claims: (i) he did not request a warrant from the Deputies that he alleges removed him; (ii) he has failed to provide a meaningful description of the Deputies he has alleged removed him from the Property, or to pursue any of the Court's suggestions that might have resulted in his identifying the Deputies, if the removal allegations were true; and (iii) he has failed to provide a meaningful description of the two people who accompanied the Deputies, describing them solely as "two other individuals," and concluding that they "apparently work for the County," with no supporting or corroborating evidence; (c) despite the Debtor's allegations that he lived with a friend during the time he was away from the Property, and borrowed money from the friend and the friend's neighbor, the Debtor has provided no Affidavits from these individuals to support his assertions; (d) the Debtor indicated in the Amended Complaint, that due to his fear of being arrested for

trespass, he did not remove the padlocks from the Property for several months after he was removed, and he entered and exited the Property through a bedroom window, yet the Debtor produced no supporting Affidavits of neighbors who may have seen him, or anyone who could corroborate any of the Debtor's statements; (e) while the Debtor states that the padlocks are in his possession, he has refused to produce them to the Defendants or the Court, on the basis that he has no obligation to do so, since they have not been sought through discovery, and the Debtor has no burden to oppose the Defendant's Cross-Motion for Summary Judgment; (f) the Court finds totally incredulous the Debtor's statement that he did not take photographs of the padlocks because he did not have a working camera and saw no reason to take the photographs; (g) despite the more than one week that the Debtor stated that he was kept from the Property, the months that the Debtor used a window to enter and exit the Property, and the more than four years during which this Adversary Proceeding has been pending, as well as the Court's specific suggestions for the Debtor to do so, the Debtor, to date, has failed to file any report or to attempt to initiate any third-party investigation with any proper investigative authorities requesting that the authority investigate his claims; and (h) while the Debtor has classified some of his above-referenced inactions as a result of "people reacting differently," and that seeking the

assistance of an entity with investigative authority would be a "fool's errand," this Court is of the opinion that the Debtor cannot adhere solely to his own rules of supporting his Complaint and proceeding with the Adversary Proceeding, when this leaves the Court with no agency investigation, corroborating evidence or genuine issue of material fact; (4) while the Debtor is correct that the Defendants' Letter and Allegretto Affidavit, which detail Allegretto's investigation of the Sheriff's Department, contain hearsay statements that are not admissible evidence, the Letter and Affidavit evidence the Defendants' efforts to go beyond their initial burden for summary judgment, and attempt to essentially prove a negative; and (5) under FRCP 56(f) and Rule 7056(f), the Debtor has not demonstrated that he cannot present any other facts or evidence essential to support his opposition to summary judgment, nor that a need or request for additional discovery otherwise prevents granting summary judgment because: (a) the Debtor has refused and failed to present facts, documents, affidavits, or other evidence, which the Debtor may be able to produce; (b) Brown indicated that she responded to the Debtor's FOIL Request by conveying to the Debtor the results of her search; (c) the Defendants' numerous pleadings in the Adversary Proceeding, including the Affidavits of Brown and Sartori, are responsive to the Debtor's FOIL Request and Interrogatories; and (d) based upon

the pleadings and hearings on the Debtor's and Defendants' Motions, and the reasons stated in this Decision & Order, including the Debtor's failure to provide corroborating evidence of his claims, no further discovery is warranted.

C.   **Debtor's Motion to Amend**

The Debtor's relief requested in the Motion to Amend the Complaint all relates to adding the Deputies, identified as John Doe No. 1 and John Doe No. 2, to the Complaint and obtaining discovery from the Deputies.  Accordingly, it is not necessary for the Court to address each of the standards of relief requested in the Debtor's Motion, and the Court hereby denies the Debtor's Motion to Amend the Complaint for all of the same grounds that form the basis of the Court's granting the Defendant's Cross-Motion for Summary Judgment in this Decision & Order.

<u>CONCLUSION</u>

The Court finds that the Debtor's allegations of removal from the Property are not credible and do not raise a material issue of fact for trial.  The Debtor is entitled to the benefit of reasonable inferences, but not an inference from facts and statements that, based upon the proceedings in the Adversary Proceeding to date, no one could reasonably believe.  Therefore,

BK. 06-21371
AP. 06-2103

the Defendants' Cross-Motion for Summary Judgment on the Second and

Third Causes of Action in the Complaint is, in all respects,

granted.  The Debtors' Cross-Motion to Amend the Complaint is, in

all respects, denied.


     **IT IS SO ORDERED.**



                                        _____/s/_____
                                        **HON. JOHN C. NINFO, II**
                                        **U.S. BANKRUPTCY JUDGE**



**Dated:  September 30, 2010**

**Page 34**

Case 2-06-02103-PRW    Doc 114    Filed 09/30/10    Entered 09/30/10 14:21:17    Desc
Main Document    Page 34 of 34